ISHEE, J.,
for the Court:
¶ 1. This is an appeal from the denial of post-conviction relief (PCR) from the Circuit Court of Lauderdale County’s revocation of Cecil Junior Pruitt’s (Pruitt) post-release supervision (PRS). Pruitt pleaded guilty to the sale of cocaine. The circuit court sentenced Pruitt to twenty years, with all but one day suspended, and ordered Pruitt to serve three years on PRS.
¶ 2. While on PRS, Pruitt was arrested again for selling cocaine. Pruitt’s PRS was subsequently revoked, and he was ordered to serve the remainder of his twenty-year sentence in the custody of the Mississippi Department of Corrections (MDOC). Aggrieved, Pruitt now appeals, raising ten assignments of error. Finding that none of Pruitt’s arguments merit relief, we affirm the circuit court’s judgment.
STATEMENT OF THE CASE
¶ 3. In 2005, Pruitt pleaded guilty to the sale of cocaine within 1,500 feet of a church, and was sentenced to twenty years *879 in the custody of the MDOC. The circuit court ordered a suspended sentence of nineteen years, three hundred and sixty-four days, with only one day for Pruitt to serve in jail. The circuit court also ordered that Pruitt serve three years on PRS.
¶ 4. While on PRS, Pruitt was arrested again for selling cocaine within 1,500 feet of a church. An affidavit asserting a violation of PRS was filed on October 10, 2007, and a warrant for Pruitt’s arrest was issued that same day. Trial was set for March 18, 2008, on the second charge for the sale of cocaine, and the PRS revocation hearing was set for the same date. However, on the morning of trial, the State agreed to nolle prosequi the new sale-of-coeaine charge and proceed only on the revocation issue. The circuit court signed a nolle prosequi order and moved forward with the revocation hearing.
¶ 5. During the hearing, the State presented testimony of Karl Merchant (Merchant), an agent with the East Mississippi Drug Task Force, and of Shannon Tension (Tension), the confidential informant. The State also presented the wire-recorded conversation of the drug sale between Pruitt and Tension. Pruitt did not present witnesses or evidence, but his counsel did cross-examine the State’s witnesses.
¶ 6. Tension stated that before the buy, he was searched by task force agents, wired, and given two marked $20 bills to use to purchase drugs. He was then dropped off in the vicinity of the sale. Pruitt, who was driving a car with his girlfriend and baby as passengers, pulled up to Tension. The two began talking, and Tension gave Pruitt money in exchange for cocaine. Once Tension walked away from the car, narcotics agents pulled Pruitt over. Cocaine residue was found in the console of the car he was driving, along with the marked $20 bills. Tension was picked up by the police shortly thereafter, and was found to be in possession of cocaine and without the $20 bills.
¶7. After hearing the testimony, the circuit court determined that Pruitt was involved in a drug sale and as a result, revoked Pruitt’s PRS. Pruitt received credit for time served while he was in jail awaiting the revocation hearing. Pruitt filed a “petition for a writ of habeas corpus and/or motion to reinstate post-release supervision.” The circuit court considered this petition as a request for post-conviction relief and denied relief without an evidentiary hearing.
¶ 8. Pruitt now appeals, asserting ten issues, which we have consolidated for clarity into the following: (1) he was denied due process of law because he did not receive proper notice for the PRS revocation hearing, and he should have first received a preliminary hearing; (2) he was not afforded due process of law because he was denied a right to discovery concerning evidence to prove his guilt of the charge upon which the revocation was based; (3) he was denied due process of law because the State only introduced a copy of a forensic report prepared by the Mississippi State Crime Laboratory concerning the cocaine he was alleged to have sold, and the laboratory technician was not called to testify; (4) the circuit court erred in denying post-conviction relief without conducting an evidentiary hearing; and (5) he received ineffective assistance of counsel.
STANDARD OF REVIEW
¶ 9. This Court will not disturb a circuit court’s decision to deny a petition for post-conviction relief unless the court’s factual findings are clearly erroneous. Forshee v. State, 853 So.2d 136, 139 (¶ 16) (Miss.Ct.App.2003). “However, where questions of law are raised[,] the applicable standard of review is de novo.” Id.
*880 DISCUSSION

I. Notice and Preliminary Hearing

¶ 10. Pruitt first argues that he did not receive adequate notice of the PRS revocation hearing, because the hearing was held in lieu of the trial. For the second charge of selling cocaine near a church, the circuit court set a trial date for March 18, 2008. On the day of the trial, however, the prosecutor dropped the charges against Pruitt and pursued only the PRS revocation. Pruitt argues that he was only notified of the PRS revocation hearing on the day the hearing took place, and because of the late notice, he was unable to adequately prepare a defense. However, we find the record is contrary to his assertions.
¶ 11. Pruitt claims that he was “ambushed” by the revocation hearing because he only received notice of the hearing on the day that the trial was originally set. The State must give prior notice of the grounds upon which it contends PRS should be revoked, and that notice must be specific and timely so as to allow an individual to mount a defense both with cross-examination of State witnesses and the opportunity to gather and present any evidence tending to show revocation is improper. Edmond v. Miss. Dep’t of Corrs., 783 So.2d 675, 679 (¶ 14) (Miss.2001); Grayson v. State, 648 So.2d 1129, 1134 (Miss.1994).
¶ 12. The evidence shows that a written “Warrant and Petition” for revocation of Pruitt’s PRS was entered on October 10, 2007, giving Pruitt notice that the MDOC had asked the circuit court to revoke the PRS due to the new charge of selling cocaine within 1,500 of a church. This petition served as formal written notice to Pruitt of the claim that he had violated his PRS. Further, the hearing transcript shows that both the trial and revocation hearing were scheduled for March 18, 2009:
BY THE COURT: The matter was scheduled — there were two matters that were scheduled today. One is the trial on the new cocaine sale charge. And as I understand it, the State is not pursuing that today.
Both Pruitt’s attorney and the attorney for the State replied in the affirmative that this was the situation. Based on the record, we find that Pruitt received adequate notice for the PRS hearing. This assignment of error is without merit.
¶ 13. Pruitt also maintains that due process requires that he should have received a preliminary revocation hearing before the final revocation hearing. An inmate on PRS has a right to a preliminary hearing as soon as practicable after he receives notice that the State intends to pursue revocation. Rusche v. State, 813 So.2d 787, 789-90 (¶ 7) (Miss.Ct.App.2002) (citing Morrissey v. Brewer, 408 U.S. 471, 485, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972)). Pruitt contends he was denied this right.
¶ 14. The record shows that Pruitt waived his right to arraignment on the second charge of the sale of cocaine, which led to the revocation hearing. At the revocation hearing, Pruitt did not raise this issue. Failure to raise the issue of denial of a preliminary hearing to revoke post-release supervision waives the issue. Hubbard v. State, 919 So.2d 1022, 1027 (¶ 17) (Miss.Ct.App.2005). Therefore, Pruitt is precluded from now raising this issue.
¶ 15. Moreover, even absent waiver, this issue is without merit. Pruitt’s argument is premised upon the notion that by denying him a preliminary hearing on the revocation, the State intentionally deprived him of the means to inquire into the charges and evidence that would be intro *881 duced against him. Yet Pruitt admits that he prepared for trial on the underlying charge, and he only later complained that he was surprised when the State introduced evidence gathered to prosecute this second charge to revoke his PRS. If he was prepared for trial, as he admits, he could not be unfairly surprised by the very evidence the State would have introduced at trial.
¶ 16. Even if we assumed that the issue was not waived, which we do not, Rusche requires that a person asserting that he failed to receive a preliminary hearing must show some harm stemmed from the denial of the hearing. Rusche, 813 So.2d at 790-91 (¶ 13). See also Roach v. State, 938 So.2d 863, 866 (¶ 5) (Miss.2006). Pruitt fails to show that he was prejudiced. Accordingly, there is no merit to this issue.

II. Discovery

¶ 17. Pruitt also contends that: he was denied a right to conduct discovery in preparation of a defense to the allegations leading to the revocation of his PRS, and he was prejudiced by the State’s decision to proceed only on the revocation of his PRS. Pruitt did not raise these issues at the revocation hearing, and we note that he was represented by counsel at the hearing. In fact, the circuit judge explicitly asked if the attorney’s understanding was that they were in court that day to nolle prosequi the second charge for sale of cocaine and proceed on the PRS revocation. Pruitt’s attorney responded: ‘Yes sir.”
¶ 18. Moreover, Pruitt cites no authority for the proposition that he had any right to discovery in a revocation hearing. We have consistently held that arguments “unsupported by cited authority need not be considered by the Court.” Dowdle Butane Gas Co. v. Moore, 831 So.2d 1124, 1136 (¶ 34) (Miss.2002).
¶ 19. However, we will briefly address the due process rights afforded in revocation hearings. In Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), the United States Supreme Court noted: “the revocation of parole is not part of a criminal prosecution and thus the panoply of rights due a defendant in such a proceeding does not apply to parole revocations.” The United States Supreme Court has also held that a defendant’s minimum due-process rights in a parole revocation hearing are the same rights provided for probation revocation hearings. Gagnon v. Scarpelli, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). Further, Mississippi has adopted these minimal due-process requirements for probation revocation hearings, which include:
(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a “neutral and detached” hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact[-]flnders as to the evidence relied on and reasons for revoking [probation or] parole.
Riely v. State, 562 So.2d 1206, 1210 (Miss. 1990); See Gagnon, 411 U.S. at 786, 93 S.Ct. 1756. Finally, pursuant to Mississippi Code Annotated section 47-7-37 (Supp. 2010), the procedures associated with the revocation of probation also apply to the revocation of post-release supervision. Thus, Pruitt is only entitled to the aforementioned minimum due-process rights in *882 this regard. Accordingly, his assertion of error has no merit.
¶ 20. Pruitt further contends he was prejudiced by the State when it proceeded with a PRS revocation hearing, rather than a criminal trial. Pruitt’s argument is quite simply that the State presented evidence tending to show more likely than not that he was guilty of the second sale of cocaine, thereby the State avoided the higher burden of proof of beyond a reasonable doubt that it would have had to show if it obtained an actual conviction on the second sale.
¶ 21. In a revocation hearing, the State is not required to prove that an individual committed a second criminal act. Moore v. Ruth, 556 So.2d 1059, 1061-62 (Miss.1990). Rather, the State must prove that it is more likely than not that an individual committed an act in violation of the terms imposed as part of his sentence. Id. at 1062.
¶ 22. In this case, Pruitt was formerly indicted on the charge of selling cocaine. His attorney signed an order setting the case for trial on March 18, 2008. Pruitt’s likely guilt on this charge was the basis for his PRS revocation. Nothing in the record shows that the State failed to comply with any discovery concerning the second sale of cocaine charge. And, in his PCR motion, Pruitt contends he was ready to defend himself against the charge. Pruitt was never punished for the second sale of cocaine because the prosecutor filed a nolle prosse. Pruitt’s present incarceration is a result of his failure to comply with provisions of his PRS, which the circuit court ordered after he had pleaded guilty to the first charge of sale of cocaine.
¶ 23. We find his argument is without merit, as the State could have proceeded with both a revocation and a criminal trial.

III. Forensic Testimony

¶ 24. Pruitt argues that: the circuit court erred in relying upon copies of the Mississippi Crime Laboratory’s chemical analysis of the cocaine found on his person, and pursuant to his Sixth Amendment rights, Melendez-Diaz v. Massachusetts, 557 U.S. 305, 129 S.Ct. 2527, 2530, 174 L.Ed.2d 314 (2009), requires in-person testimony of individuals who conducted the chemical testing. Melendez-Diaz concerned a criminal prosecution. Id. It is well established that Sixth Amendment rights do not extend to parolees and other similarly situation persons who have already been adjudicated guilty of the crime for which they are punished. See United States v. Garcia-Avalino, 444 F.3d 444, 446-47 (5th Cir.2006). This issue is without merit.

IV. Evidentiary Heariny

¶ 25. Pruitt raises the following issues that he contends required an evi-dentiary hearing in order to comply with due process of law: he was denied his right to testify in his own defense; he was denied the right of criminal discovery; and the confidential informant testified untruthfully at the revocation hearing.
¶ 26. A petitioner must demonstrate, by affidavit or otherwise, that there are unresolved issues of fact which, if concluded favorably to the petitioner, would warrant relief. McCuiston v. State, 758 So.2d 1082, 1086 (¶ 9) (Miss.Ct.App.2000). See Miss.Code Ann. § 99-39-19 (Rev.2007). In this case, the record shows that Pruitt was present at the revocation hearing and was represented by counsel. Yet the defense rested without calling any witnesses. Despite Pruitt’s allegation that he was denied the right to testify in his own defense, the record shows that Pruitt was not prevented from testifying at the revocation hearing.
*883 ¶ 27. Further, as previously discussed, Pruitt had no right to criminal discovery in the revocation matter, but he had the opportunity to avail himself of full criminal discovery concerning the merits of the charge of the second sale of cocaine. The confidential informant testified at the revocation hearing, and Pruitt’s attorney cross-examined him concerning whether he had any opportunity to conceal money or drugs on his person after being strip-searched by agents of the East Mississippi Drug Force.
¶ 28. The only support for Pruitt’s allegation that the confidential informant perjured himself are bare allegations attached to his PCR motion. Mere allegations in a motion for post-conviction relief are insufficient to survive summary dismissal. Mayhan v. State, 26 So.3d 1072, 1076 (¶ 10) (Miss.Ct.App.2009). Therefore, the circuit court properly summarily dismissed Pruitt’s allegations pertaining to his right to testify, criminal discovery, and to his allegation that the confidential informant committed perjury.
¶ 29. The circuit court entered two lengthy orders in this matter. The circuit court noted that the Mississippi Rules of Evidence do not apply in revocation proceedings, and in any event, the drugs involved in Pruitt’s alleged second sale of cocaine were legally seized from him because there was probable cause to arrest him based upon the agents having listened to him during a drug sale just moments prior to the arrest. Pruitt’s counsel did cross-examine the confidential informant as to the veracity of his testimony. However, the prosecutor objected to Pruitt’s counsel’s cross-examination of a drug-task-force agent, and requested that he be instructed to use “a civil tone of voice” at “the podium.” The circuit judge termed Pruitt’s counsel’s cross-examination as “aggressive questioning.” And, at Pruitt’s counsel’s request, the circuit judge did listen to the audio recording of the drug transaction. Accordingly, we find this issue is without merit.

V. Ineffective Assistance of Counsel

¶ 30. Pruitt additionally contends that: he received ineffective assistance of counsel in the revocation hearing, and due process requires that he should have been afforded an evidentiary hearing on this issue. Claims of ineffective assistance of counsel are governed by the two-part test set out in Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by the Mississippi Supreme Court in Stringer v. State, 454 So.2d 468, 476-77 (Miss.1984). In order to prevail on a claim of ineffective assistance of counsel, an appellant must demonstrate that his counsel’s performance was deficient, and that but for the deficiency, the outcome of the case would have been different. Strickland, 466 U.S. at 687, 104 S.Ct. 2052.
¶ 31. Pruitt claims that his counsel was ineffective in failing to suppress seized evidence and statements made by Pruitt, introduce evidence showing that Pruitt had recently purchased the car in which the drug transaction transpired, impeach Tension as to his motivations to commit alleged perjury and his opportunity to get the cocaine from other people, cross-examine drug-task-force agents and Tension regarding contradictions in their statements, advise Pruitt to testify in his own defense, and introduce the audio recording of the drug transaction.
¶ 32. As previously discussed, to revoke an inmate’s PRS, the State is not required to prove that an individual committed a second criminal act. Rather, the State must prove that it is more likely than not that an individual committed an act in violation of the terms imposed as part of his sentence. Moore, 556 So.2d at 1061- *884 62. In this case, the circuit court heard testimony from a drug-task-force agent who had participated in arresting Pruitt, as well as testimony from Tension. Both witnesses stated that Tension was searched and then given $40 to purchase drugs. Tension testified that he purchased cocaine from Pruitt. The drug-task-force agent testified that he and others had listened to the transaction as it occurred and that Tension turned the cocaine over to the task force after the transaction. When the police searched Pruitt’s car, they found cocaine residue, drug paraphernalia, and the marked bills.
¶ 33. The record also shows that Pruitt’s counsel did make some objections to evidence presented to the circuit court. Pruitt’s argument that his counsel failed to ask that the wired conversation be played in open court is not accurate. His counsel insisted that the circuit court listen to the wire-recorded conversations, and they were listened to by the judge in his chambers. In addition, Pruitt has not provided evidence to demonstrate that but for his counsel’s deficiency, his PRS would not have been revoked.
¶ 34. Thus, the circuit court correctly found that the facts did not support a claim of ineffective assistance of counsel; therefore, Pruitt did not meet his burden under the Strickland test. Accordingly, this issue is without merit.
¶ 35. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT DENYING THE MOTION FOR POST-CONVICTION RELIEF IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., MYERS, BARNES AND ROBERTS, JJ., CONCUR. IRVING, P.J., AND MAXWELL, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. RUSSELL, J., NOT PARTICIPATING.